Good morning, ladies and gentlemen. We have five cases on the calendar this morning. Two from the Court of Federal Claims, Acts and Takings. The latter is being submitted in the briefs and therefore will not be argued. And we have three patent cases, two from district courts and one from the PTO. Our first case is Atkins v. United States, 2016-1961. Mr. Rogers. Good morning, may it please the Court. My name is John Rogers and I represent Charles and Jane Atkins, the appellants in this case. The Atkins were the victims of horrific fraud and lost more than $2 million. This was a theft and there's no issue with that on appeal. The transactions occurred about 17 years ago. The Atkins are retired and living on what savings are left. The only issue before us is the year of the loss. And the taxpayers are asking the Court to reverse the trial court and remand the action to the Court of Federal Claims for the taxing of damages and costs. Can you explain to me, there's a gap in the record with respect to 2002. What happened with respect to 2002? In 2002 is when they started to, they believed that. I meant for the tax year. For the tax year. There's nothing that shows that what happened. We've got, we know what happened for 2001. We know what happened for 2003 and 2004. What happened with respect to 2002? In 2002, I believe their tax return is in the record for 2002. And 2002 showed that they did have some income that would have been in the carryback offset by the loss taken. But it doesn't show a disallowance for 2002. It doesn't show anything. You don't know what happened for 2002? 2002 was a carryback year. There was no actual income tax. So it wasn't disallowed? It wasn't allowed because the 2004 refund was disallowed. Amended return was disallowed which would have carried back to 2001, 2002, 2003. Alright. So 2002 was disallowed. It doesn't say that in the record. It says 2001 was disallowed, 2003 was disallowed. It does not report what happened for 2002. But you just don't know. We believe it was disallowed because there was no, he never got any money from it or no refund of it. Okay. So the standard review we believe is de novo since the issues are issues of law. The facts are pretty much, are not in dispute in this case. The trial court in fact found many facts by and large in favor of the taxpayer, for example, the credibility of Mr. Atkins. The issue here is how the court interpreted the regulations and applied them to those facts. But the loss was in 2002 and at that point there was a reasonable prospect of recovery, right? The loss was in 2002. And the court found that and so the question was, when could the loss be taken? And that was determined, had to be determined by when there was reasonable certainty whether there would be reimbursement. So don't we go to the second step? Yes, well, first off. And what was wrong about what the court did with that? Well, two problems with that. The court took a very strict interpretation of the reasonable certainty test in applying the Johnson case to it. In that they required, their only fact they relied upon was the fact that the case had not been dismissed. The court in essence found through all the facts that Mr. Atkins, and there's no evidence that Mr. Atkins did anything after 2004. But he hadn't withdrawn, he hadn't abandoned the arbitration. He, for all intents and purposes, he had abandoned the arbitration by not taking any action on it. That's a fact finding, right? To which we owe deference. And the court on pages 12 and 14 and 22 of its opinion said he in essence had abandoned it. He had not taken any action on it. Can I just ask you, I took it that the, at least to me, the most, the stronger of your two arguments here is not to disagree with the CFC's determination that you hadn't abandoned the claim. It is rather that the CFC treated abandonment as the only possible ground on which you could justify getting the deduction. And that's plainly wrong under the regulation. You're entitled to have your claim continue and yet meet the standard of ascertainable, reasonable certainty that you're not going to get the recovery that you want to deduct. And she, the district, the Court of Federal Claims did not make a specific finding on that. Correct. Okay. Why, on the assumption that the Court of Federal Claims did not make that finding, because you can have your claim go and still take the loss if the probability is low enough. Correct. What is the evidence that would justify sending it back for a finding about whether the probability is low enough? Well, the evidence was overwhelming that as of 2004, these people had been indicted. They had pled guilty. It seemed to me that the evidence that the government is concentrating, and the government's brief substantially, I mean, it puts this abandonment ground at the back because I think it recognizes that abandonment is not necessary for you to prevail. So the real question is, what is the evidence on whether you had a reasonable certainty that you weren't going to get the money that you wanted to deduct? And the core of what I think they focus on is you didn't make efforts to find out what assets the people had that you were suing in NASD. Well, I think the facts in that situation that we didn't, A, the records of these people were for the most part had already been seized by the federal government for their investigatory basis for seeking to try to convict these people who had done the wrongdoing. And the indictments themselves, did they contain forfeiture counts? Not only the indictments, but the pleas and the pleas of guilty, which were done in 2004 for many of these people, included forfeitures, fines, and some restitution. But as the facts showed in the trial court, the chance of restitution, it would have taken like 1600 years before the people would have gotten back their money. So the forfeitures and the fines take priority over the restitution. And that's correct, Your Honor. So it was very unlikely. But we don't, and it seems to me that the record is not conveying a clear answer to this. But for example, Donald and Company was not indicted, is that right? They were not indicted because they were out of business. So what do we know about what it means out of business? They shuttered their doors. That's another metaphor. How do we know that they didn't have any money? Because they disappeared. I mean, there was no record of any assets of Donald and Company after 2002. And we found nothing to pursue at that point. Whatever records of Donald and Company had been taken by the government, we subpoenaed those records. And that was one of the things we mentioned in our brief was that the court would not turn over the records the government had, would not force the government to turn over their investigatory records. In the Court of Federal Claims, I gather you said it was clear that there was no money. I'm just talking about Donald and Company, from Donald and Company. Did the government say, oh, no, Donald, here's why one might think. We don't have a record of it. We don't have any record of that and they possess the records to disprove our statement that the Donald and Company had no money. But then as to the criminally charged individuals, I guess two of them by indictment, one of them by information, what evidence was there that you could be reasonably certain that those individuals didn't have enough money to pay you? There were several things. First off, just the fact that we did get their financial statements that they had in later years. It wasn't the year of 2004. That did not exist. But we did have in later years and they had nothing. And also the record showed that their restitution payments were so low, which is based on income, that they certainly would not have had a lot to get. That plus what was seized and forfeited were not a lot of assets. And if they had more substantial assets, certainly the government would have seized that. So this goes to the point that while the question of reasonable probability has to be forward looking, that you can look at subsequent events to determine whether or not that reasonable probability existed at the time. Especially in this case, the refund was filed in 2006. So how do you unring the bell of what you know in 2006 to say, well, I couldn't have known that in 2004? Does any of this information fall within the bounds of the discovery that you were seeking from the government that the court disallowed? We don't know because we never saw it. But we would think so because they seized all the records of Donald and Company. They seized all the records of these individuals regarding these transactions. But that would have disclosed their current assets as of that point in time. I have to believe that, Your Honor, because that's what the court would have ruled upon to forfeit the assets. And the forfeiture provisions basically, as I understand it, claims that virtually all of the income from Donald and Company was subject to forfeiture because it was earned fraudulently. Correct. And certainly, there were ongoing schemes and devices going on in multiple areas, not just for the Atkins MyTurn stock, but Electric and several other stocks and Classica stock were indicted upon. So our principal point also here is that because there was no reasonable prospect of recovery and there's no reasonable certainty that they would get anything as of 2004, there was just no hope at that point. And that's when Mr. Atkins basically pulled the plug and basically said, I walked away. We also want to point out that the revenue procedure 2009-20, which deals with Ponzi schemes, is not on point. But it's certainly analogous. And what it says very clearly is that the year of discovery is the year of indictment. So if you're in the regulations, don't interpret the word. Right. But you're not saying that actually controls. You're just saying that's indicative of how this should be looked at. How this should be looked at is that once he learned of the indictments, that changed the change the whole tenor of the case. Mr. Rogers, you want to save rebuttal time? Yes, Your Honor. Thank you. Mr. Sheehan. May it please the Court, I'm Anthony Sheehan and I represent the United States. On the law, there's one point of disagreement I have with Mr. Rogers about the ascertained with a reasonable certainty test. He's saying that we can go into the future and then try to look back. We disagree with that. The statute says the year of loss is the year where the taxpayer can take the deduction is the year in which the taxpayer discovers the loss. The regulation? No, the statute says that. The statute. 165E. And that's what the statute would normally allow, but the IRS takes the position that despite that, you can't if you think there's some chance that you're going to recover. And this is the first point because I don't even understand why the IRS would like the methodology that's been adopted by the Court of Claims. I mean, as I read the regulation, it says if there's a reasonable probability of recovery, that's the standard. And that reasonable certainty is the evidentiary level that you have to prove that standard. So is there a reasonable probability of recovery? And can you establish that there's not to a reasonable certainty? The notion that there would be two tests and that somehow it would be easier early on when you might really haven't even pursued a claim and then harder later doesn't make any sense to me. Well, I think you made two points, Your Honor. The first one is that, I think it was as Judge Charanta pointed out, in our brief, we kind of stepped away from that bright line test of you have to abandon it. But the IRS still reads the regulation as more of a temporal regulation that in the year of discovery, you have a reasonable prospect of recovery early on. And if you do, then later years as you're pursuing your claim, as you're presumably doing your investigations and getting more information in, you have to show that you've ascertained with reasonable certainty based on what you've gathered. You have to prove by a reasonable certainty that you no longer have a reasonable probability. I understand that the word reasonable shows up both places in the regulation, but there's several other courts, including the Tenth Circuit and others, who have interpreted this in a more logical fashion than the Court of Federal Claims seems to have in this case. Now, I'm not sure it ultimately changes the result in most cases, but it makes it an easier regulation to understand. Well, again, the government would still put forward that it's a two-stage temporal test, but I don't know that it makes sense. It is, but just, I mean, let me see if I can say the different words for what I think exactly what Judge O'Malley is saying. The regulation, in a common sense way, says even though you discover it in year one, if you have a claim, you can't sue if there is a sufficient probability that you might recover, until that probability doesn't exist anymore, as shown by a certain kind of evidence. But the probability is the same. At the front, in year one, year two, year three, year four, there's no higher level of probability, just a, I'm not even sure there's a different level of proof, but it's the same probability. Well, so long as these tests remain ascertained with reasonable certainty that I'm not going to get my money, then it probably will not make any difference in this case. Is Judge Toronto correct when he talks about the probability and the reasonable certainty? Certainty is, as you say, it's temporal, it relates to a later point in time, and it's a much higher standard, isn't it? Yes, certainly ascertained with reasonable certainty is a higher standard than simply reasonable prospect of recovery. I don't think there's a problem in this case, because I think we're all in agreement, we are certainly in a later year, and certainly it's the ascertained with reasonable certainty test that would apply to year 2004, no matter what. Okay, but ascertaining what? A reasonable probability, not remote possibility, though. There still has to be a reasonable probability, and so the question is, in 2004, what do you have? Or whether or not we've had sufficient findings with respect to what we have in 2004. Yes, what we have for 2004 is, again, it's the taxpayer's burden to show that the taxpayer ascertained in that year with reasonable certainty, and what we have here is more or less... Do you agree that it's more a totality of the circumstances test and that there's not one litmus-like abandonment? Yes, that is the position we took in our brief. Because that wouldn't make sense, because then you'd say, well, if I'm a taxpayer, I'm just going to abandon that thing fast. Correct, Your Honor, yes. That's the last thing I think the IRS would want. And that's probably not good for anybody except the insurance carrier. True, true. The law does try to make taxpayers look to the wrongdoers and the insurance carriers first. But certainly, in our brief, as Judge Taranto pointed out, we backed away from that bright-line test. Certainly, if you're going to argue abandonment, you have to show it by objective evidence, by a release or something like that. But the inquiry doesn't end there. Unfortunately, at least as I read the Court of Federal Claims opinion, the findings ended there. So there just aren't findings that I'm done talking about abandonment, there wasn't an abandonment, now I need to figure out whether there was reasonable certainty that there wasn't going to be recovery, and here's why I find there wasn't. Yes, but we can still look at the record after, I think it was a three- Except we can't make the findings. It's a factual question, right? Yes, Your Honor, but I can point out to you the evidence that is, and more importantly, the evidence that is not in this record. The evidence that's not? This is like the dog that didn't bark, is that what you're about to say? For example, the Atkins did not undertake themselves or with any other victims to go look for assets. They believed that this pump and dump scheme had been very profitable for Donald and Company, and that there were assets that there might be money there. They didn't look for it. There were forfeiture requests in the indictments and forfeiture agreements in the plea agreements, correct? Yes, there were, and that does not necessarily hurt them because that means that the government's going to come in and start marshalling the assets and set up a reimbursement. No, no, no, no. The government takes the money and keeps the money, and if there's a restitution order, that's separate. Those forfeitures are fines. In fact, we've just recently issued a case discussing that very fact. The Nokia case? Yes, where the issue there was the $44 million that the government received in that case was going to be used to help set up restitution. It's an entirely discretionary decision, and it happens in extremely rare cases. But in 2004, the year in which Mr. Atkins was taking this deduction, so early in the process, you could not rule that out just by looking and saying... So again, maybe there was a remote possibility that the Attorney General would take a discretionary act to set up a fund that the government has no obligation to set up and almost never does? That's a reasonable probability? Yes, it is. Would that money have been available to pay for their losses on my turn stock, which were not the subject of the criminal charges? There are two answers to that question. First of all, they did have stock that was in the indictment, the elect and the classica. In terms of my turn, the regulation does say related losses. But I thought the my turn was a very large share of their losses. The my turn was a very large share of their losses, and the regulations that established the reimbursement program do say that compensation restitution can be made for losses related to those in the indictment, and certainly the my turn losses were related to those in the indictment. What did the government say, concede, whatever, about Donald and Company in the Court of Federal Claims, which was not the subject of any indictment? Or criminal information? Donald and Company... I gather its doors don't open anymore. What does that mean about financial? It means that it is no longer actively conducting business. It does not necessarily mean that the assets it might have squirreled away, like the $1.2 million laundered through Chase Manhattan Bank, into banks which were also named in the indictment, might not be there somewhere and be recoverable with the possibility. The problem is that at the end of 2004, there is just nothing in the record that shows that the Atkins had ruled out, had ascertained with a reasonable certainty, that no, we are not going to recover anything. Can I just ask a question? I've been confused about the following of this fact. Do they really need to have determined that they were going to recover nothing? What if they had said, okay, I think there's a chance worth pursuing that maybe there's $100,000, but out of my $2.5 million loss, I know and it's perfectly clear, there is no way I'm getting 2.4 out from it. Why are they not entitled to take the 2.4 in 2004? That's answered by the Court of Federal Claims' second opinion in Johnson. If they've ascertained with reasonable certainty that the 2.4, no, we're not going to get it, it's just a remote chance, then in that year, they can take the 2.4. Could they do that on remand in this case, if we remand it for the findings that I think are not present here? If they're able to put on evidence that at the end of 2004, they knew from that evidence that there's a portion they were absolutely not going to get, that would be the burden of proof. We've already had a three-day trial where they had the opportunity to put on that evidence about what they knew at the end of 2004. So I don't know what... If the Court of Federal Claims were to look at the evidence that's in the record and it was persuaded, I might note that most of it's... There are lots of cases that say you don't have to hope for restitution 16 or 116 years down the road. Having sat on the bench for years and years in the district court, I don't think I ever saw anybody get more than a penny or two in restitution. You don't have to assume that the possibility of a restitution after all the assets are seized is a reasonable probability, do you? I think that you need to take a look at it. In 2004, it was so early in the process, we had the indictments. We knew there had been guilty pleas. Those were still under seal until 2005. So you really couldn't rule it out in 2004. All that means really is that the deduction gets delayed. Indeed, if you look at, again, the Johnson case, the taxpayers there made sure they got protective claims in for every year because these cases can be pretty fuzzy. If all that means can be extremely consequential, which is why you care so much about years, particularly if you move from actively earning income to retirement years, there may be nothing to deduct the thing against. But the key is, again, to find the right year under the test and the regulation. If it's a year that happens to be favorable to the taxpayer, so be it. If it happens to be favorable to the government, so be it. But as the Supreme Court said, they don't have to be incorrigible optimists under this test, do they? They do not have to be incorrigible optimists, but we would still maintain that 2004 is so early in the process with all the evidence that was not put in about asset searches and determining what's really going on that it's just not the right year. If the denial as to 2004 is upheld, what are they supposed to do? Now, it's perfectly clear there was a very large loss. They should be entitled to a deduction for it. When can they get it? Looking at all the facts, in this particular record, the government's position that on this record, the proper year would be 2008, which is the year they would get it. They formally withdrew their arbitration claim, not because of a bright-line test, but because of the lack of other evidence of searches and all that to rule out. Can they still claim it for 2008? The problem is that they never filed a refund claim for 2008, which is odd because that's the year of withdrawal. Your view is they're just out of luck because they have missed their opportunity to file for the year that now we have focused on. After all this evidence to say 2004 a little too early and 2008, things gelled. In 2008, not only did they withdraw their claim, but also in December of 2008, the IRS denied the refund claim for 2004. That's still within the tax year. Wouldn't you have said 2008 was too late if they'd made that claim? Really, by 2004, when you say those indictments were under seal, if it's objective evidence, the plea agreements, if the plea agreements, in those plea agreements, they gave up all of their assets, then that is what objectively happened in 2004, regardless of what they knew. I would answer that too. I'd come back again to the possibility of restitution. Secondly, we're not trying to play a shell game here. We looked at this and the government's position is that 2008 is the correct year. They had until April 15, 2012, a year and a half into this litigation to file that refund claim. I see my time is up. If there are no further questions, I thank the court and ask it to refer. Thank you, Mr. Sheehan. Mr. Rogers has some rebuttal time. Just a few points. I think, obviously, if the court has any questions of me, I'd be happy to answer them. Even if we find that there's insufficient findings on the record, if in fact 2005 or 2006 is a more logical point in time, you have a problem because you didn't make any protective findings. I tend to disagree a little bit with that, Your Honor, because in 2006, when the claims were made for 2004, that's when you get into that 1311 through 1313 sections of the code, which talk about if there's a double denial of a deduction, meaning that because you filed in the wrong year and there's a finding that it's a different year, that the court can go back and fix it by saying, no, you're allowed the deduction in 2003 or 2005 and calculate the damages and enter judgment based on that. I do not believe that section of the code requires an administrative claim. It was put in the code for just this reason where you have an amorphous kind of fact pattern as to a year of loss. Why would they put in the code if a finding results in a double denial of the deduction, then the court may make an adjustment accordingly. We mentioned it in our brief just to highlight that to the court as a possibility. Especially because the trial court and the government seem to indicate that 2003 might be the year of loss in that trial and then the court's footnotes to its findings. But again, it was looking at that bright line test at the trial court. So we believe, quite frankly, that the court can send it back if it finds that more evidence is needed as to the year of loss. I believe, quite frankly, that the evidence is overwhelming, even what we had. They weren't going to get anything once these people were indicted and had to forfeit their assets. We just feel that the court should reverse and remand it for the calculation of damages. The IRS looked at this and Mr. Kaplan was ready to grant the refund. But the statute of limitations ran out and we had to file in court. And the Justice Department and the upper treasury decided to take a different view. So we believe that the court ample evidence exists that nothing would be recovered and the refund should be granted. Thank you, Your Honor.